DECISION AND JUDGMENT ENTRY
{¶ 1} Richard Dunham[2] and Terri Neeley[3] appeal their convictions in the Scioto County Court of Common Pleas for drug possession. Dunham and Neeley contend that the trial court erred in denying their motion to suppress the evidence seized from their home. Because we find that police seized the evidence from Dunham and Neeley's residence pursuant to a valid search warrant, we disagree. Dunham and Neeley also contend that the trial court erred in permitting evidence of their other bad acts. Because this evidence was relevant to the state's proof of the crimes charged, we disagree. Dunham and Neeley next assert that the trial court deprived them of their right to counsel by failing to inform them that they are entitled to conflict-free counsel. Because no actual conflict of interest existed, we disagree.
 {¶ 2} Dunham and Neeley argue that their convictions are contrary to the manifest weight of the evidence. We disagree because we find that the record contains substantial evidence upon which the jury could conclude that the state proved all elements of the crimes charged beyond a reasonable doubt. Dunham and Neeley also argue that the trial court erred in instructing the jury on their affirmative defense and the forfeiture specification. Because we find that Dunham and Neeley bore the burden of proof with regard to their affirmative defense, because the evidence supported an instruction on the forfeiture specification, and because Dunham and Neeley did not object to the procedural error relating to the forfeiture specification, we disagree. Finally, Dunham and Neeley assert that the trial court improperly convicted them of multiple offenses and subjected them to multiple sentences for the same crime. Because the trial court sentenced Dunham and Neeley to consecutive sentences for allied offenses of similar import, and the state did not prove that Dunham and Neeley possessed a separate animus as to each crime, we agree. Accordingly, we affirm in part and reverse in part the trial court's judgment, and we remand this cause for further proceedings consistent with this opinion.
 I. {¶ 3} On May 23, 2002, Donna Frazee, an informant to the Kentucky State Police, telephoned Neeley and arranged a drug transaction. Frazee arranged to pick Neeley up at her home and drive Neeley to Kentucky, where Neeley would sell some prescription drugs. As planned with police, Frazee ran a stop sign and the Kentucky officers stopped her car. Neeley and her friend, Patty Craft, were passengers in the car.
 {¶ 4} The Kentucky officers obtained Frazee's consent to search the car. The officers' search yielded a large quantity of Morphine Sulfate and other pills. Sergeant Podunavac of the Kentucky State police read Neeley her Miranda rights. He did not obtain a written waiver of rights from Neeley. However, Kentucky State Trooper Claxton heard Sgt. Podunavac read the warnings and heard Neeley waive her rights.
 {¶ 5} Neeley told the officers that she did not have a legal prescription for the pills, that they were hers, and that she intended to sell them. She identified each pill to Tpr. Claxton and told him the street price for each. Based upon the number of pills and the information supplied by Neeley, Tpr. Claxton estimated the value of Neeley's pills as over $28,000. Neeley also told Tpr. Claxton that she and her husband, Dunham, had a lot more pills at their residence at 1208 Longview Avenue in West Portsmouth, Ohio.
 {¶ 6} Based on Neeley's self-incriminating statements to the Kentucky officers, Officer Todd Byrant of the Southern Ohio Law Enforcement Drug Task Force sought a warrant to search Dunham and Neeley's residence. In his affidavit, Officer Bryant stated, in pertinent part:
* * * Officers of the Kentucky State Police arrested Terri Dunham who said she is the wife of Ed Dunham and resides at 1208 Longview Ave. West Portsmouth, Ohio. Terri Dunham was arrested for Possession of 421 MS Contin (Morphin[e] Sulfate) pills along with a large assortment of other pills that are currently being identified. Terri Dunham stated that her husband Ed Dunham has a lot more pills at their residence but she does not want to elaborate any further because she has children at the residence and fears for their safety. Terri Dunham listed her address as 1208 Longview Ave. and gave the phone number of 7408584835 which is the address and phone number for the residence at 1208 Longview Ave. Terri Dunham further stated that she did not have a legal prescription for the MS Contin pills.
 {¶ 7} In their search of Dunham and Neeley's residence, officers discovered numerous indicators of drug activity including over $12,000 in cash, 31 firearms, jewelry, Oxycontin, Methylphenidate, pharmacy bottles, prescription bottles, and an inventory list of schedule II drugs. The state issued separate but identical indictments charging Dunham and Neeley each with one count of possession of Oxycontin in excess of five times the bulk amount, one count of possession of Oxycontin in excess of the bulk amount, and two counts of possession of Methylphenidate in excess of the bulk amount. The indictments also set forth forfeiture specifications on the cash, firearms, and jewelry.
 {¶ 8} Dunham and Neeley pled not guilty and retained the same attorney. The state filed a motion to consolidate the two cases, which the trial court granted. Dunham and Neeley filed a motion to suppress the evidence seized from their home, alleging that Officer Bryant unlawfully obtained the warrant. The trial court denied the motion, finding that the magistrate properly issued the warrant.
 {¶ 9} Dunham and Neeley filed a motion in limine asking the trial court to prevent the state from introducing any evidence of Neeley's arrest in Kentucky. The trial court denied the motion, but indicated to counsel that it would consider giving a limiting instruction regarding the evidence's relevance to Dunham. Neither Dunham nor Neeley moved to sever their trials. At the joint trial, the state called Tpr. Claxton to testify regarding Neeley's arrest and the statements Neeley made to him regarding the drugs at her home. Counsel did not renew his objection on behalf of either client when Tpr. Claxton testified about Neeley's Kentucky arrest.
 {¶ 10} Officer Bryant testified regarding the search of Dunham and Neeley's residence. In the storage shed behind the home, officers discovered a plastic grocery sack with two pharmacy bottles of Methylphenidate containing pills, two empty pharmacy bottles of Oxycontin, and a prescription bottle for Phentramine Atapex. Officer Bryant explained that a pharmacy bottle is different from an individual's prescription bottle. A pharmacy bottle is a larger bottle, which the pharmacist keeps on his shelf, from which he dispenses pills into prescription bottles. Based on his experience, Officer Bryant believed that the only way to obtain such bottles is to steal them from a pharmacy.
 {¶ 11} In the medicine cabinet, officers discovered three prescription bottles of Oxycontin issued to Neeley. Throughout Dunham and Neeley's residence, officers discovered eleven empty prescription bottles and fourteen or fifteen prescription bottles containing pills, all issued to either Dunham or Neeley. The officers also found four additional prescription bottles issued to four separate individuals and a fifth prescription bottle with the label removed. The labels on the prescription bottles dated back to 1998.
 {¶ 12} Additionally, Officer Bryant testified that he discovered several inventory-type lists at the residence, including a notebook next to the telephone that read "count so far," and listed various types of prescription drugs and the number of each. Officer Bryant testified that in his experience it is typical for drug dealers to keep an inventory of the drugs they sell. Officer Bryant also identified several handwritten notes found at the residence regarding individuals who were willing to sell their prescriptions, individuals who wished to buy drugs, and individuals who received drugs on credit. Additionally, officers discovered a note discussing how to obtain prescriptions from a certain clinic, a note regarding trading cigarettes for drugs, notes regarding when and where to take certain people in order to obtain their prescriptions, and notes calculating the street value of various quantities of prescription drugs. These notes were written in notebooks, on scraps of paper, on note cards, and in an organizer bearing Neeley's name.
 {¶ 13} Officer Bryant next identified a bag containing $12,000 in cash, which he found in the closet of Dunham and Neeley's bedroom. Officers also discovered numerous unopened cartons of cigarettes and close to $1,000 worth of unopened batteries and videotapes. In the basement, garage, and a secret compartment underneath the porch, officers found a large number of unopened boxes containing new power tools such as circular saws, heavy-duty drills and a planer. The officers also found new hand tools, new stereo equipment, new household appliances, a stack of new tires, and plants. The officers discovered a total of thirty-one guns at the home.
 {¶ 14} Patty Craft testified that she was with Neeley when Neeley received the telephone call from Frazee just prior to their arrests in Kentucky. Craft overheard the conversation, and knew that they were traveling to Kentucky for a drug transaction. After the phone call, Dunham got out a coffee can that contained pills and put them in a plastic bag.
 {¶ 15} Craft knows that Neeley is HIV positive, that Neeley sometimes experiences a lot of pain, and that Neeley receives prescriptions for several drugs for her medical condition. Craft also testified that she has purchased drugs from Neeley on many occasions. Craft sometimes paid Neeley for drugs with merchandise she had shoplifted. In particular, Craft stated that she had shoplifted the potted plants in Dunham and Neeley's backyard and exchanged them for drugs the day before officers conducted their search. Craft also testified that she observed others purchase drugs from Neeley and sell Neeley their prescriptions. She observed Dunham counting money from drug transactions. She also heard Dunham yelling at Neeley to prevent Neeley from taking her prescribed medication, both because he did not want Neeley to get addicted and because the pills generated income.
 {¶ 16} Dunham and Neeley introduced a record from Wright's Pharmacy reflecting the prescriptions Neeley received from her doctor and filled there. They also introduced an audiotape of a telephone conversation between Neeley and Craft during which Craft stated that she had never purchased drugs from Neeley. Craft testified on re-direct examination that she was in prison at the time of the phone conversations, and that she lied during the conversations because she knew the calls were recorded.
 {¶ 17} The trial court instructed the jury that possessing a valid prescription is an affirmative defense to a charge of drug possession, but that the burden is on the defendants to prove such a defense by a preponderance of evidence. The court also instructed the jury that the money, jewelry, and firearms found during the search of Dunham and Neeley's residence were subject to forfeiture if they found by the greater weight of the evidence that Dunham and Neeley obtained the items as a result of their aggravated possession of drugs.
 {¶ 18} The jury found Dunham and Neeley guilty of all counts and determined that the cash, jewelry and firearms were subject to forfeiture. The trial court pronounced judgments of conviction and sentenced Dunham and Neeley each to fines on each count and to six years of incarceration on count one and three years of incarceration on each of counts two, three and four. The trial court ordered Dunham and Neeley to serve the prison terms on counts one, two, and three consecutive to one another, with the term on count four to run concurrently with count three. The court also entered judgment of forfeiture of Dunham and Neeley's money, jewelry and firearms.
 {¶ 19} Dunham and Neeley appeal, asserting the following six assignments of error: "I. The trial court erred in refusing to suppress the evidence seized from defendants-appellants' home pursuant to an unlawfully obtained warrant. II. The trial court erred in permitting testimony and evidence at trial regarding alleged other bad acts of defendants-appellants. III. After holding that certain evidence could be admitted by the state, the trial court improperly failed to advise defendants-appellants of their right to conflict-free counsel such to deprive them of effective assistance of counsel at trial. IV. Defendants' convictions are manifestly against the weight of the evidence and must be overturned. V. The trial court erred in instructing the jury as to the charges alleged in the indictments and as to the forfeiture provisions. VI. Defendants-appellants were improperly convicted of multiple offenses and improperly subjected to multiple punishment (sic) for the same crime."
 II. {¶ 20} In their first assignment of error, Dunham and Neeley contend that the trial court erred in refusing to suppress the evidence seized from their home. Dunham and Neeley contend that Officer Bryant misrepresented facts in order to obtain the warrant for the search of their home. Specifically, Dunham and Neeley contend that Officer Bryant represented that he had personal knowledge of the conversation Neeley had with Kentucky police at the time of her arrest in Kentucky.
 {¶ 21} Appellate review of a decision on a motion to suppress evidence presents a mixed question of law and fact. State v. McNamara (1997),124 Ohio App.3d 706, citing United States v. Martinez (C.A.11, 1992),949 F.2d 1117, 1119. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. State v.Carter (1995), 72 Ohio St.3d 545, 552. We must accept a trial court's factual findings if they are supported by competent, credible evidence.State v. Guysinger (1993), 86 Ohio App.3d 592, 594. We then apply the factual findings to the law regarding suppression of evidence. Finally, we review the trial court's application of the law to those facts under the de novo standard of review. State v. Anderson (1995),100 Ohio App.3d 688, 691.
 {¶ 22} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide for "[t]he right of the people to be secure * * * against unreasonable searches and seizures * * *." Searches and seizures conducted without a prior finding of probable cause by a judge or magistrate are per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions. California v. Acevedo (1991), 500 U.S. 565;State v. Tincher (1988), 47 Ohio App.3d 188. The trial court must exclude any evidence obtained through actions that violate an accused'sFourth Amendment rights. Mapp v. Ohio (1961), 367 U.S. 643.
 {¶ 23} In order to invalidate a search warrant due to false statements in the underlying affidavit, the defendant must show by a preponderance of the evidence that affiant made false statements "intentionally, or with reckless disregard for the truth." State v. Waddy (1992),63 Ohio St.3d 424, 441, quoting Franks v. Delaware (1978), 438 U.S. 154,155-156, 98 S.Ct. 2674, 57 L.Ed.2d 667. Omissions are treated as false statements when they are "designed to mislead, or * * * made in reckless disregard of whether they would mislead, the magistrate." Waddy, quotingUnited States v. Colkley (C.A.4, 1990), 899 F.2d 297, 301.
 {¶ 24} Hearsay may be the basis for issuance of a warrant as long as there is a substantial basis for crediting the hearsay. United States v.Ventresca (1965), 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684. "`[A]n affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant,' so long as the magistrate is `informed of some of the underlying circumstances' supporting the affiant's conclusions and his belief that any informant involved * * * was `credible' or his information `reliable.'" Ventresca at 108. (Citations omitted.) Thus, a law enforcement officer may rely upon information supplied to him by a fellow officer in an affidavit to obtain a search warrant. State v. Taylor (1992), 82 Ohio App.3d 434, 442.
 {¶ 25} Here, Officer Bryant swore in his affidavit, "Officers of the Kentucky State Police arrested [Neeley] who said * * *." Contrary to Dunham and Neeley's assertion, we find that this statement does not reflect an intention on the part of Officer Bryant to mislead the magistrate into believing that he personally witnessed Neeley's statement to the Kentucky police. Rather, Officer Bryant indicates that the Kentucky police conveyed Neeley's statement to him. Thus, we find no deceit in the statement. Additionally, other statements in the affidavit, such as the fact that the address and telephone number provided by Neeley matched her actual address and telephone number, shows that Officer Bryant took measures to find some indicia of the reliability of the information supplied. Thus, we find that the trial court did not err in finding that the warrant was valid and overruling Dunham and Neeley's motion to suppress.
 {¶ 26} Accordingly, we overrule Dunham and Neeley's first assignment of error.
 III. {¶ 27} In their second assignment of error, Dunham and Neeley assert that the trial court erred in permitting the state to introduce evidence of their other bad acts, in contravention of Evid.R. 404(B). Specifically, Dunham and Neeley contend that evidence of Neeley's Kentucky arrest and evidence that they engaged in drug trafficking prejudiced them.
 {¶ 28} A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to defendant. Rigby v. Lake Cty. (1991),58 Ohio St.3d 269, 271; State v. Hymore (1967), 9 Ohio St.2d 122, certiorari denied (1968), 390 U.S. 1024, 88 S.Ct. 1409, 20 L.Ed.2d 281. A finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161,169.
 {¶ 29} Evid.R. 404(B) provides: "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Thus, while evidence of other crimes, wrongs or acts committed by the accused is not admissible to show that the accused has a propensity to commit crimes, it may be relevant to show: motive, intent, the absence of a mistake or accident, or a scheme, plan, or system in committing the act in question. State v. Broom (1988), 40 Ohio St.3d 277, paragraph one of the syllabus. When other acts evidence is relevant for one of those limited purposes, the court may properly admit it, even though the evidence may show or tend to show the commission of another crime by the accused. R.C. 2945.59.
 {¶ 30} Because Evid.R. 404(B) and R.C. 2945.59 create an exception to the common law, we must construe the standard for admissibility against the state. State v. Jamison (1990), 49 Ohio St.3d 182, 184; Broom at 282. For proper admissibility, the trial court must determine that: (1) the other act is relevant to the crime in question, and (2) evidence of the other act is material to an issue placed in question at trial. Statev. McCornell (1993), 91 Ohio App.3d 141, 146, citing State v. Howard
(1978), 57 Ohio App.2d 1; State v. Strong (1963), 119 Ohio App. 31. Additionally, the court must consider factors such as (1) the time of the other act, State v. Henderson (1991), 76 Ohio App.3d 290; Young v.State (1932), 44 Ohio App. 1; (2) the accused's modus operandi, Statev. Coleman (1988), 37 Ohio St.3d 286; State v. Hill (1992),64 Ohio St.3d 313; (3) the nature of the other acts committed, State v.Smith, Ross App. No. 02CA2687, 2003-Ohio-5524; and (4) the location of the other acts, State v. Moorehead (1970), 24 Ohio St.2d 166.
 {¶ 31} Here, the state alleged that Dunham and Neeley illegally possessed a large quantity of drugs. Neeley's statement to the Kentucky officers about the drugs at her home constitutes evidence of motive, knowledge, and a scheme, plan, or system of illegally possessing drugs. Neeley's Kentucky offense occurred just hours prior to the police finding drugs at Dunham and Neeley's residence. Additionally, Craft's testimony about how Dunham and Neeley used old prescription bottles to make the drugs they were selling appear to be legal constitutes evidence of Dunham and Neeley's modus operandi in an ongoing scheme, plan or system. The offense of illegally possessing drugs is of the same nature of the trafficking acts Craft testified about; namely, drug offenses.
 {¶ 32} Based on these factors, we cannot conclude that the trial court abused its discretion when it permitted the state to introduce evidence tending to show that Dunham and Neeley engaged in drug trafficking. The court properly allowed the evidence under Evid.R. 404(B) and R.C. 2945.59. Accordingly, we overrule Dunham and Neeley's second assignment of error.
 IV. {¶ 33} In their third assignment of error, Dunham and Neeley contend that the trial court improperly failed to advise each of them about their right to conflict-free counsel. Specifically, Dunham and Neeley contend that a conflict arose when the trial court ruled that evidence of Neeley's Kentucky arrest was admissible, because the evidence unduly prejudiced Dunham.
 {¶ 34} In reviewing a conflict of interest claim, we must resolve two distinct issues. First, we must determine whether the trial court had a duty to investigate the potential conflict of interest. State v. Ingol
(1993), 89 Ohio App.3d 45, 48, citing State v. Gillard (1992),64 Ohio St.3d 304, syllabus. If the duty to inquire arose but the trial court failed to do so, we must remand the case to the trial court to determine whether an actual conflict of interest existed. Gillard, at 312. If the duty to inquire did not arise, then we must determine whether an actual conflict adversely affected counsel's ability to represent the defendant. State v. Manross (1988), 40 Ohio St.3d 180, syllabus; Cuylerv. Sullivan (1980), 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333.
 {¶ 35} As to the first issue, the Ohio Supreme Court held that, "[w]here a trial court knows or reasonably should know of an attorney's possible conflict of interest in the representation of a person charged with a crime, the trial court has an affirmative duty to inquire whether a conflict of interest actually exists." Gillard at syllabus. If the trial court is not alerted to the possibility of a conflict, the trial court may assume that multiple representation involves no conflict or that the defendants knew of the risk of conflict and chose to accept it.Ingol at 49, citing Cuyler at 346-347. The Ohio Supreme Court urges trial courts to adopt the "better practice" of advising each defendant of his or her right to separate representation, particularly in the instance of a joint trial. Manross at syllabus. However, the defense attorney is in the best position professionally and ethically to determine whether a conflict exists or might arise. Id. at 181-182. We presume prejudice only when a trial court "impermissibly imperils" a criminal defendant's right to a fair trial by breaching its affirmative duty to inquire whether a conflict of interest exists. Gillard at 311-312.
 {¶ 36} "A lawyer represents conflicting interests when, on behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose." Manross, supra, at 182, citing ColumbusBar Assn. v. Grelle (1968), 14 Ohio St.2d 208. When the defendant asserts a defense that neither he nor his co-defendant was connected with the crime, the defendants' interests do not diverge. Gillard at 310, following Cuyler, supra.
 {¶ 37} Here, the trial court did not advise Dunham and Neeley of their right to separate representation. However, Dunham and Neeley's counsel did not inform the court that he believed a conflict might exist. Although the trial court indicated during the hearing on Dunham and Neeley's motion in limine that it might give a limiting instruction as to Dunham with regard to Neeley's Kentucky arrest, counsel never suggested to the court that its denial of his motion in limine required him to advance opposing contentions on behalf of his two clients. Additionally, Dunham and Neeley asserted an identical defense: that they obtained the drugs found in their home with valid prescriptions issued to Neeley. Furthermore, the admission of that evidence in the state's case against Dunham was proper. As we held with regard to Dunham and Neeley's second assignment of error, Neeley's statement to the Kentucky police was relevant to proving both defendants' motive and knowledge.
 {¶ 38} Thus, we find that the trial court was not aware of a potential conflict of interest between the two defendants, as Dunham and Neeley's counsel did not advise the court of a potential conflict. Therefore, while the better practice for the trial court would have been to inform Dunham and Neeley of their right to separate counsel, no affirmative duty to do so arose in this instance. Additionally, because no actual conflict of interest existed, the trial court's failure to inquire did not deprive Dunham and Neeley of their right to conflict-free counsel. Accordingly, we overrule Dunham and Neeley's third assignment of error.
 V. {¶ 39} In their fourth assignment of error, Dunham and Neeley contend that their convictions are contrary to the manifest weight of the evidence.
 {¶ 40} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. State v. Garrow (1995),103 Ohio App.3d 368, 370-71; State v. Martin (1983),20 Ohio App.3d 172, 175. "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus.
 {¶ 41} Here, the state charged Dunham and Neeley with aggravated possession of drugs. The state produced evidence that officers found large quantities of Oxycontin and Methylphenidate at Dunham and Neeley's home. The state introduced inventory-type lists reflecting the large number of pills Dunham and Neeley had, including descriptions of the pills, their dosages, and their street value. Additionally, the state produced evidence, particularly in the form of testimony from Craft, that Dunham and Neeley purchased prescription drugs from others. Although Dunham and Neeley presented evidence challenging Craft's credibility, the jury was free to believe or disbelieve her testimony. We find that the evidence listed above constitutes substantial evidence upon which the jury could reasonably conclude beyond a reasonable doubt that Dunham and Neeley committed the offenses of aggravated possession of Oxycontin and Methylphenidate. Accordingly, we overrule Dunham and Neeley's fourth assignment of error.
 VI. {¶ 42} In their fifth assignment of error, Dunham and Neeley contend that the trial court erred in its instructions to the jury. Specifically, Dunham and Neeley contend that the trial court erred in instructing the jury that the burden was on them to show that they obtained the Oxycontin found in their home pursuant to a valid prescription. Additionally, Dunham and Neeley contend that the trial court erred by instructing the jury on the forfeiture specification.
 {¶ 43} Initially, we note that, while Dunham and Neeley entered an objection to the jury instructions on the record, they did not state the grounds of their objection or specify the matter to which they objected. "A party may not assign as error the giving or the failure to give any instructions unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection." Crim.R. 30(A). Although a defendant may have failed to raise a timely and proper objection to an error affecting a substantial right, courts may notice the error. Crim.R. 52(B). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Landrum (1990),53 Ohio St.3d 107, 111. The plain error rule does not require reversal unless, but for the error, the outcome of the trial would clearly have been otherwise. See State v. Underwood (1983), 3 Ohio St.3d 12; State v.Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus.
 {¶ 44} First, Dunham and Neeley contend that the trial court erred in instructing the jury that they carried the burden of proving that they obtained the Oxycontin found in their home pursuant to a valid prescription. Dunham and Neeley agree that a defendant must prove an affirmative defense by the preponderance of the evidence. See R.C.2901.05(A). They contend, however, that the defense that the drugs were obtained via prescription is not an affirmative defense, but rather an "exemption" under the statute prohibiting drug possession. They further argue that, because proof of a prescription is properly characterized as an "exemption," the burden was on the state to prove beyond a reasonable doubt that Dunham and Neeley did not obtain the drugs found in their home pursuant to a valid prescription.
 {¶ 45} R.C. 2901.05(C)(2) provides that an affirmative defense is one "involving an excuse or justification peculiarly within the knowledge of the accused." The issue of whether or not one obtained drugs pursuant to a valid prescription is peculiarly within the knowledge of the person claiming the prescription. See State v. Mackey (Feb. 4, 1981), Hamilton App. No. C-800052. Contrary to Dunham and Neeley's argument, "[a] person accused of violating a penal statute which contains an exemption has the burden of proving, by a preponderance of the evidence, that he is within such exemption." Mackey, citing R.C. 2901.05(A). See, also, State v.Frost (1979), 57 Ohio St. 2d 121, 127 (it is not unconstitutional to require a criminal defendant who claims the protection of an exemption to carry the burden of proof as to that exemption); Cincinnati v. Epley
(1962), 116 Ohio App. 245, 247 (the burden of proving facts to bring a defendant within the operation of an exemption is on the defendant asserting the exemption). Thus, we find that the trial court did not err by instructing the jury that Dunham and Neeley bore the burden of proving that they possessed the drugs pursuant to a valid prescription.
 {¶ 46} Next, Dunham and Neeley contend that the trial court erred in instructing the jury on the forfeiture specification when the state failed to present evidence that they directly or indirectly obtained their cash, jewelry, and firearms from the commission of a felony drug abuse offense.
 {¶ 47} The law requires a trial court to give the jury all instructions that are relevant and necessary for the jury to properly weigh the evidence and reach their verdict as fact finder. State v.Comen (1990), 50 Ohio St.3d 206, paragraph two of the syllabus.
 {¶ 48} Pursuant to R.C. 2925.42(A)(1)(a), a person's property is subject to forfeiture if the property "is derived directly or indirectly from, any proceeds that the person obtained directly or indirectly from the commission of the felony drug abuse offense or act." Additionally, a person's property is subject to forfeiture if it "was used or intended to be used in any manner to commit, or to facilitate the commission of, the felony drug abuse offense or act." R.C. 2925.42(A)(1)(b).
 {¶ 49} Here, the state presented evidence that Dunham and Neeley used money, jewelry, and firearms as currency for exchanges of drugs and prescriptions for drugs. Specifically, Craft testified that she observed people trade such items for drugs. Additionally, the amount of cash, number of rings, and number of firearms, when taken in conjunction with evidence regarding Dunham and Neeley's drug activities, constitutes circumstantial evidence that Dunham and Neeley obtained the property directly or indirectly through a drug abuse offense. Therefore, we find that the state presented evidence necessary to support an instruction on the forfeiture specification.
 {¶ 50} Finally, Dunham and Neeley contend that the trial court deprived them of their due process rights by instructing the jury on the forfeiture specification before their convictions on the drug possession charges. R.C. 2925.42(B) sets forth the procedural requirements for a forfeiture proceeding pursuant to R.C. 2925.42(A)(1)(a) and (b). Under R.C. 2925.42(B)(1)(a), a specification alleging that the property was related to a drug abuse offense must be in the indictment. If the drug abuse offense charge proceeds to a trial by jury, "the jury shall not be informed of any specification [described under division (A)(1)(a) or (A)(1)(b)] * * * prior to the alleged offender being convicted of * * * the felony drug abuse offense[.]" R.C. 2925.42(B)(4). Instead, after the defendant's conviction of a felony drug abuse offense, the court shall conduct a special proceeding to determine whether the property described in the indictment will be subject to forfeiture. R.C. 2925.42(B)(3)(a).
 {¶ 51} Here, the trial court informed the jury of the forfeiture specification before the jury rendered a verdict on the drug abuse offense. The court provided the jury with instructions relating to the forfeiture of the property during its instructions on the drug abuse offenses. The jury determined that Dunham and Neeley must forfeit the property at the same time they entered a guilty verdict. Thus, the trial court erred by failing to follow the procedural requirements of R.C.2925.42(B). State v. Lee, Trumbull App. No. 2002-T-0168, 2004-Ohio-6954, at ¶ 57, citing State v. Owens (Dec. 29, 1993), Montgomery App. No. 3039. However, because Dunham and Neeley failed to specifically object to the trial court instructing the jury on the forfeiture specification prior to their convictions, they waived the error. Lee at ¶ 58; Owens,
supra. See, also, State v. Awan (1986), 22 Ohio St.3d 120, syllabus.
 {¶ 52} Because we find that the trial court did not err in instructing the jury that Dunham and Neeley bore the burden of proof with regard to their affirmative defense, because the evidence supported an instruction on the forfeiture specification, and because Dunham and Neeley did not object to the procedural error relating to the forfeiture specification, we overrule the fifth assignment of error.
 VII. {¶ 53} In their sixth assignment of error, Dunham and Neeley contend that the trial court improperly subjected them to multiple convictions for the same crime. The state contends that Dunham and Neeley waived any error because they did not object to their multiple convictions at trial.
 {¶ 54} Crim.R. 52(B) provides that a plain error in the proceedings that affects substantial rights may be noticed even though it was not brought to the attention of the court. The Supreme Court of Ohio cautions that "notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. We may invoke the plain error standard of analysis to sua sponte consider the particular errors affecting an accused's substantial rights. State v. Sneed (1992), 63 Ohio St.3d 3, 10, citing Crim.R. 52(B); Long, supra.
 {¶ 55} Violation of double jeopardy violates an offender's substantial rights and constitutes plain error. See State v. Collins, Ross App. No. 01CA2950, 2002-Ohio-3212, at ¶ 27; State v. Fischer (1977),52 Ohio App.2d 53; 2 Baldwin's Ohio Practice, Criminal Law (2003) Section 80:19. However, no prejudice arises when the trial court runs the offender's sentences for allied offenses concurrent to one another. Statev. King, Muskingum App. No. CT2003-0057, 2004-Ohio-6277, at ¶ 25; Statev. Hamilton (Sept. 7, 2000), Scioto App. No. 99CA2673; State v. Fields
(1994), 97 Ohio App.3d 337, 346-347. But see State v. Lang (1995),102 Ohio App.3d 243 (court committed prejudicial plain error by imposing multiple, concurrent sentences for allied offenses of similar import; prejudice arose from criminal record that revealed conviction for two felonies when in fact defendant had committed only one criminal act).
 {¶ 56} The Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution protect a defendant from being put in jeopardy twice for the same offense. R.C. 2941.25 codifies the constitutional prohibition on double jeopardy. R.C. 2941.25 requires merger of the separate counts of an indictment for purposes of sentencing as follows: "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one. (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 57} Thus, we follow a two-step test to determine whether two crimes with which a defendant is charged are allied offenses of similar import.State v. Jones (1997), 78 Ohio St.3d 12, 13; State v. Blankenship
(1988), 38 Ohio St.3d 116, 117. In the first step, we compare the elements of the two crimes to determine whether they correspond to such a degree that the commission of one crime results in the commission of the other. In engaging in this comparison, we examine the statutorily defined elements of the offenses in the abstract, not in context of the particular facts of the case before us. State v. Rance (1999),85 Ohio St.3d 632, paragraph one of the syllabus. If the two crimes do so correspond, the crimes are allied offenses of similar import and we must proceed to the second step. Id.; Blankenship at 117. In the second step, we review the defendant's conduct. If we find that the crimes were committed separately or that there was a separate animus for each crime, then the defendant may be convicted of both offenses. Rance at 639, citing Jones at 14; Blankenship.
 {¶ 58} Here, Dunham and Neeley contend that the offenses of possessing Oxycontin in excess of five times the bulk amount (count one of the indictments) and possessing Oxycontin in excess of the bulk amount (count two) are allied offenses of similar import. Additionally, they contend that the two offenses for possessing Methylphenidate in excess of the bulk amount (counts three and four) are allied offenses of similar import. They further argue that the state did not prove a separate animus for either of the sets of two counts, and therefore that in each instance, their convictions of both offenses violates double jeopardy. Finally, they assert that because the trial court made their sentences on the two Oxycontin offenses run consecutive to one another, and because they were subjected to fines on both Oxycontin convictions and both Methylphenidate convictions, they were prejudiced by the trial court's error. Further, they contend that the outcome of their trial would have been different, in that their total sentence would have been shorter and their total fine lower, but for the error.
 {¶ 59} The state does not argue that the crimes are not allied offenses of similar import. In comparing the elements of the two Oxycontin crimes, it is clear that when one commits the offense of possessing Oxycontin in excess of five times the bulk amount, he also commits the offense of possessing Oxycontin in excess of the bulk amount. See R.C. 2925.11(A)(C)(1). The Methylphenidate charges are identical, and therefore likewise allied offenses.
 {¶ 60} Nor does the state argue that it presented evidence of a separate animus for the crimes. Indeed, the evidence at trial showed that all the drugs police charged Dunham and Neeley with possessing were found in the same place (at their home) and at the same time (the day officers executed the search warrant). However, the state contends that Dunham and Neeley waived any error by failing to object at trial.
 {¶ 61} As we noted above, we may notice plain error when the trial court's actions affect an accused's substantial rights. Here, Dunham and Neeley received consecutive sentences and multiple fines for the offense of possessing Oxycontin in excess of five times the bulk amount and the offense of possessing Oxycontin in excess of the bulk amount. Additionally, Dunham and Neeley received multiple fines for the two charges for possession of Methylphenidate. The offenses are allied offenses of similar import, and the state does not assert that Dunham and Neeley possessed a separate animus for each offense. Therefore, we find that sentencing Dunham and Neeley to consecutive sentences and multiple fines on the allied offenses constitutes plain error, and we sustain their sixth assignment of error.
 {¶ 62} In sum, we overrule each of Dunham and Neeley's first five assignments of error. We sustain Dunham and Neeley's sixth assignment of error, and remand this cause for resentencing in accordance with this opinion.
Judgment be affirmed in part, reversed in part, and the causeremanded.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, and the cause remanded to the trial court for the trial court for further proceedings consistent with this opinion, and Appellants and Appellee to split costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J.: Concurs in Judgment and Opinion.
Harsha, J.: Concurs in Judgment and Opinion to Assignments of Error 1, 4 and 6; Dissents to Assignments of Error 2 and 3 and forfeiture issue in Assignment of Error 5.
[2] Richard Dunham also uses the name Ed Dunham.
[3] Terri Neeley also uses the name Terri Dunham.