DECISION AND JUDGMENT ENTRY
{¶ 1} Wesley Miller appeals his convictions and sentences for burglary, theft, and safecracking from the Washington County Common Pleas Court. On appeal, Miller contends that the trial court erred when it denied his motion to suppress evidence seized, without a warrant, from his car, which was located on private property. Because the officers had probable cause for the search, and because Miller's car was mobile, we disagree. Miller next contends that the trial court erred when it admitted evidence of a prior theft of $100. Because Miller admitted that he stole the $100 a few days before the charged offenses for the purpose of paying off his wife's debt, and because the state offered the evidence to show motive for the charged offenses, we disagree. Miller next contends that the trial court erred when it admitted other acts evidence of three *Page 2 
pending burglary offenses. Because (1) the state offered this evidence for the purpose of proving the element of identity, and (2) the state showed that Miller's scheme or modus operandi was unusual or unique, we disagree. Miller next contends that his non-minimum sentence violates the Due Process Clause of the United States Constitution. Because we have addressed this issue in the past, we disagree. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} The Washington County Grand Jury indicted Miller for burglary, theft, and safecracking. Miller entered not guilty pleas and filed a motion to suppress evidence seized from his car. The court denied the motion and the case proceeded to a jury trial.
 {¶ 3} At trial, the evidence showed that Miller and Autumn Miller, his wife, lived with Miller's grandparents. On the day in question, Miller and his wife were home and watched Miller's grandparents leave to go bowling in a league that included Tina Shrader and Ronald Smithberger. While Tina and Ronald ("the victims") were bowling, someone broke into their home and stole a lockbox that contained more than $1,700 in cash. The cash included $100 and $50 bills.
 {¶ 4} The investigation showed that Miller's wife knew one of the victim's daughters and had visited their home. After Miller's grandparents went bowling, someone placed a call from their home to the victims' home. During the burglary investigation, Miller's grandmother gave an officer two bags of new clothing that Miller or his wife brought to the home. Miller's grandmother told the officer that Miller and his wife were poor. She *Page 3 
did not know how they could purchase the new clothing. She said that she and her husband had quit giving money to Miller and his wife.
 {¶ 5} After the burglary, witnesses saw Miller buying things with large bills. For example, he purchased things at Wal-Mart and paid for them with a $50 bill. He made three purchases at Finish Line, amounting to $100.51, $59.99, and $149.97. The clerk recalled that Miller paid the $149.97 purchase by giving her a $100 bill, a $50 bill, and a $20 bill. In addition, Miller paid off his wife's debt of $115. Miller had $175 in cash, including a $100 bill, when officers booked him into jail.
 {¶ 6} Over the objection of Miller, the state introduced evidence of other acts. First, for the purpose of showing motive, the state introduced evidence that Miller stole money from his employer's cash register several days before the charged burglary, theft, and safecracking. Miller told an officer that he stole the money to pay off his wife's debt. Second, for the purpose of showing identity, the state introduced evidence of three other pending burglary charges against Miller. Through phone records, the state showed that Miller used his cell phone to call the victims' homes to seemingly find out if anyone was home.
 {¶ 7} Miller did not testify at trial. Miller's father provided the only alternate explanation as to why Miller had the cash after the burglary, theft, and safecracking; he testified that he had loaned Miller $200.
 {¶ 8} After closing arguments, the court gave the jury instructions regarding the law. As part of those instructions, the court stated, "Now, there was evidence about * * * other acts that Mr. Wesley Miller may have committed. I want to comment on that, *Page 4 
before we go into the issues. Evidence was received about the commission of other acts of Mr. Miller that may constitute other crimes or wrongs. This evidence was received only for a limited purpose, and it may be considered by you only for the limited purposes provided for in the law. It was not received, and you may not consider it, to prove the character of Mr. Miller, in order to show that he acted in conformity with or in accordance with that character. If you find that the evidence of these other acts is true, and that Wesley Miller committed them, then you may consider that evidence only for the purpose of deciding whether it provides motive, preparation, plan, scheme, or system surrounding this offense or identity. The evidence of — of Mr. Wesley Miller's alleged acts at Go Mart is only offered by the State to prove motive. The evidence of Mr. Wesley Miller's alleged acts at the Rushing, Russell, and Nine residence[s], is only offered by the State to prove preparation or plan in this offense and the identity of the person who committed the offense in this case. This evidence cannot be considered for any other purpose."
 {¶ 9} The jury found Miller guilty of all three offenses, i.e., burglary, theft, and safecracking. The court sentenced Miller accordingly.
 {¶ 10} Miller appeals and asserts the following three assignments of error: I. "The trial court erred by denying Mr. Miller's motion to suppress evidence seized from his car parked at his home without a warrant in violation of his rights under the Fourth, Sixth andFourteenth Amendments to the United States Constitution, as well as Section 16, Article I of the Ohio Constitution." II. "The trial court erred and deprived Mr. Miller of his right to a fair trial when it admitted unfairly prejudicial other acts evidence in violation of *Page 5 
Ohio Evid.R. 404(B), 403(A), R.C. 2945.59, and the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution." And, III. "The trial court erred by imposing a non-minimum prison term in violation of the Due Process Clause of the Fourteenth Amendment [to the] United States Constitution."
 II. {¶ 11} Miller contends in his first assignment of error that the trial court erred when it denied his motion to suppress.
 {¶ 12} The denial of a motion to suppress involves mixed questions of law and fact. When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of the witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366. Consequently, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger
(1993), 86 Ohio App.3d 592, 594. However, an appellate court determines as a matter of law, without deference to the trial court, whether these facts meet the applicable legal standard. State v. Klein (1991),73 Ohio App.3d 486, 488.
 {¶ 13} Miller claims that the state needed a warrant before it could seize evidence from his car. He maintains that the state violated his rights under the Fourth Amendment of the United States Constitution when it searched his car and seized his shoes. He asserts that the state used the shoes to match footprints at the house. He concludes that the footprints were the only physical evidence placing him at the home. *Page 6 
 {¶ 14} The Fourth Amendment of the Constitution of the United States and Section 14, Article I of the Ohio Constitution protect persons from unreasonable searches and seizures conducted by the state. If a search or seizure is not conducted pursuant to a judicial warrant, then it is unreasonable per se. Katz v. United States (1967), 389 U.S. 347. A court must suppress evidence obtained without a warrant in a criminal prosecution unless the state is able to establish an exception to the warrant requirement. Id. at 357. The state maintains that the automobile exception, inter alia, applies.
 {¶ 15} The automobile exception to the warrant requirement permits the warrantless search of an automobile if the search is supported by probable cause. California v. Acevedo (1991), 500 U.S. 565, 579-580;United States v. Ross (1982), 456 U.S. 798, 824; Mills, supra, at 367. "Such probable cause must be based upon objective facts that could justify the issuance of a search warrant by a neutral and detached magistrate." State v. Osborne (April 21, 1997), Pike App. No. 96CA584, citing Chambers v. Maroney (1975), 399 U.S. 42, 52. Probable cause for a search is present when the totality of the circumstances make it fairly probable that particularly described evidence of a crime will be found.Illinois v. Gates (1983), 462 U.S. 213, 238. "Where police officers have probable cause to search an entire vehicle, they may conduct a warrantless search of every part of the vehicle and its contents * * * that may logically conceal the object of the search." State v.Welch (1985), 18 Ohio St.3d 88, syllabus, citing Ross, supra. See, also,Acevedo, supra. *Page 7 
 {¶ 16} Here, we find that the officers had probable cause to search Miller's automobile. Miller and his wife lived with Miller's grandparents. Detective C. A. Brockmeier testified at the motion to suppress hearing as to the evidence the officers were aware of at the time they searched Miller's car, which was located on the grandparents' property. He outlined the following evidence:
 (1) Miller and his wife saw Miller's grandparents leave their home to go bowling with the husband and wife victims;
 (2) Miller's grandparents were bowling with the victims at the time they were burglarized;
 (3) Miller's wife knew the victims and was familiar with their home;
 (4) The state had already indicted Miller with more than 10 other burglaries, including homes where the people bowled with Miller's grandparents;
 (5) Regarding the other indicted burglaries, officers found Miller in a car with a box full of stolen jewelry taken from those burglaries;
 (6) Miller, along with his co-defendants, had bought new clothing with the proceeds from the other indicted burglaries;
 (7) Miller's grandmother provided the officers with Miller's new clothing, along with a new shoe box, and stated that Miller did not have the money to buy the new clothing;
 (8) The victims had over $1,700 in cash taken in the burglary. A couple of days after the burglary, Miller paid off a $115 check fee for his wife and paid for shopping items with a $50 bill;
 (9) Officers saw another shoe box in Miller's car before the search;
 (10) The victim wrote a statement to the officers and identified Miller as a suspect.
 {¶ 17} Therefore, after considering the totality of the circumstances and using an objective standard, we find that the officers had probable cause to search Miller's automobile for fruits of the crimes.
 {¶ 18} Miller contends, however, that it makes a difference that his car was on private property, not public property. He cites Coolidge v.New Hampshire (1971), 403 U.S. 443 in support. *Page 8 
 {¶ 19} After the Supreme Court of the United States found that an occupant of a car has a lesser expectation of privacy in his car than in his home, California v. Carney (1985), 471 U.S. 386, 391-392, it "has emphasized that no special exigency is required to conduct a warrantless search of an automobile when the car is mobile and the searching officer has probable cause to believe that fruits of a crime may be present in the automobile." United States v. Graham (C.A.6, 2001), 275 F.3d 490,509-510, quoting Maryland v. Dyson (1999), 527 U.S. 465, 466. It no longer matters that the automobile is on private property instead of public property. Id. The touchstone is whether the vehicle is mobile.
 {¶ 20} Here, Miller's grandfather had just driven the car. Thus, it was mobile. Consequently, the car's presence on private property is immaterial.
 {¶ 21} Accordingly, we overrule Miller's first assignment of error.
 III. {¶ 22} Miller contends in his second assignment of error that the trial court erred during his trial when it allowed testimony of prior bad acts. Specifically, Miller claims that the court should not have allowed evidence of: (1) the theft of $100; and (2) the three other pending burglary charges.
 {¶ 23} "A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to defendant." State v. Dunham, Scioto App. No. 04CA2931, 2005-Ohio-3642, ¶ 28, citing Rigby v. Lake Cty. (1991), 58 Ohio *Page 9 
St.3d 269, 271; State v. Hymore (1967), 9 Ohio St.2d 122, certiorari denied (1968), 390 U.S. 1024. "A finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably." Dunham at ¶ 28, citing Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. "When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court." Dunham at ¶ 28, citing Berk v. Matthews (1990),53 Ohio St.3d 161, 169.
 {¶ 24} Evid.R. 404(B) states, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." However, such evidence "may * * * be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. "Thus, while evidence of other crimes, wrongs or acts committed by the accused is not admissible to show that the accused has a propensity to commit crimes, it may be relevant to show: motive, intent, the absence of a mistake or accident, or a scheme, plan, or system in committing the act in question." Dunham at ¶ 29, citing State v. Broom (1988), 40 Ohio St.3d 277, paragraph one of the syllabus. As such, "[w]hen other acts evidence is relevant for one of those limited purposes, the court may properly admit it, even though the evidence may show or tend to show the commission of another crime by the accused." Dunham at ¶ 29, citing R.C. 2945.59. But otherwise admissible evidence must be excluded if the probative value of the evidence is outweighed by the danger of unfair prejudice. Evid.R. 403(A). *Page 10 
 {¶ 25} Here, the state introduced evidence of Miller's admission to an officer that he stole $100 in cash from his employer's cash register eight days before the current burglary because his wife had a bill to pay. The state introduced this evidence to show motive for the burglary, i.e., his wife's debt. In addition, the court gave the jury a limiting instruction. Under these circumstances, we find that the probative value of this evidence outweighs its prejudice. Therefore, we find that the trial court did not abuse its discretion when it admitted this "other act" evidence to show motive.
 {¶ 26} However, the state also introduced evidence of three prior pending burglaries to prove identity, an element of the charged burglary, theft, and safecracking offenses. The state claims that these prior bad acts show a scheme or modus operandi, which shows identity. "In order to be admissible for identity purposes, the similarity between the other acts and the charged offense, i.e., their pattern and characteristics, must be so unusual and distinctive as to be like a signature. In sum, the conduct must be a `behavioral fingerprint.'"State v. Picklesimer (Oct. 15, 1996), Pickaway App. No. 96CA2, citingState v. Lowe (1994), 69 Ohio St.3d 527, 531-532.[1]
 {¶ 27} The state claims that Miller's act of calling the victims' homes to verify that no one was home just before committing the crimes constitutes the scheme or modus operandi. And, thus, this behavior identifies Miller as the culprit. We agree.
 {¶ 28} We find that this similarity between the other acts and the charged offense is so unusual as to be a "behavioral fingerprint." See id. We acknowledge that "[t]he mere repeated commission of crimes of the same class is insufficient to establish a behavioral *Page 11 
fingerprint." Id. citing Lowe. Here, the "behavioral fingerprint" is not only the fact that someone called to make sure no one was home before burglarizing the homes, but also the fact that investigators traced all the phone calls made on the day of each burglary to phones Miller normally used, i.e., his cell phone or the phone where he lived.
 {¶ 29} In addition, the trial court gave a limiting instruction to the jury. Under these circumstances, we further find that the probative value of this evidence outweighs its prejudice. Therefore, we find that the trial court did not abuse its discretion when it admitted these "other acts" of burglaries into evidence.
 {¶ 30} Accordingly, we overrule Miller's second assignment of error.
 IV. {¶ 31} Miller contends in his third assignment of error that the trial court erred by imposing a non-minimum sentence. He maintains that the sentence violates the Due Process Clause of the United States Constitution. Specifically, he claims that the "state court decision [i.e. State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, which followed the reasoning in Blakely v. Washington (2004), 542 U.S. 296] deprived him of a statutory liberty interest when it removes procedural safeguards in a statute."
 {¶ 32} Miller did not raise his due process argument in the trial court. He received his sentence after Blakely, supra, was decided on June 24, 2004. Thus, he has forfeited all but plain error. State v.Payne, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 31 ("we hold that a lack of an objection in the trial court forfeits the Blakely issue for purposes of appeal when the sentencing occurred after the announcement ofBlakely."). *Page 12 
 {¶ 33} Pursuant to Crim.R. 52(B), we may notice plain errors or defects affecting substantial rights, although a defendant did not bring them to the attention of the court. The Supreme Court of Ohio has found that "[b]y its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial." State v. Barnes (2002), 94 Ohio St.3d 21,27, 2002-Ohio-68. See Payne, supra. First, an error must exist. Id., citing State v. Hill (2001), 92 Ohio St.3d 191, 200, citing UnitedStates v. Olano (1993), 507 U.S. 725, 732 (interpreting Crim.R. 52[B]'s identical federal counterpart, Fed.R.Crim.P. 52[b]). Second, the error must be plain, obvious, or clear. Id. (Citations omitted.) Third, the error must affect "substantial rights," which the court has interpreted to mean "but for the error, the outcome of the trial clearly would have been otherwise." Id. citing Hill at 205; State v. Moreland (1990),50 Ohio St.3d 58, 62; State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus.
 {¶ 34} "The burden of demonstrating plain error is on the party asserting it. (Cite omitted.) A reversal is warranted if the party can prove that the outcome `would have been different absent the error.'" (Cite omitted.) Payne at ¶ 17. A reviewing court should use its discretion under Crim.R. 52(B) to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Long, supra, at paragraph three of the syllabus.
 {¶ 35} In State v. Grimes, Washington App. No. 06CA17, 2006-Ohio-6360, this court considered and rejected a due process challenge to a sentence imposed in accordance with the Supreme Court of Ohio's holding inFoster. There, we agreed with the *Page 13 
observations of the Ninth and Second Districts, which rejected such challenges outright. In doing so, those courts expressed that it is unlikely that the Supreme Court of Ohio would have directed lower level courts to violate the Constitution; and, in any event, the courts of appeal are bound by directives of the Supreme Court of Ohio. Id. at ¶ 8, citing State v. Hildreth, Lorain App. No. 06CA8879, 2006-Ohio-5058, at ¶ 10; State v. Durbin, Greene App. No. 2005-CA-134, 2006-Ohio-5125, at ¶¶ 41-42.
 {¶ 36} In finding that the Supreme Court of Ohio's remedy inFoster does not violate the Due Process Clause of the United States Constitution, we also expressed our approval of the reasoning set forth by the Third District in State v. McGhee, Shelby App. No. 17-06-05,2006-Ohio-5162. Grimes at ¶ 9, citing with approval McGhee at ¶¶ 11 
13-20. Because the range of prison terms for the defendant's offense remained the same both before and after Foster, we concluded, "it is difficult to understand how appellant could maintain that an enlargement of the criminal statute occurred, generally, or available punishments, in particular." Id. at ¶ 10. Further, we noted that the appellant did not attempt to explain how he would have acted differently had he known that the Supreme Court of Ohio would strike down parts of R.C. 2929.14. Id. Accordingly, we found that the court did not err in imposing the maximum sentence for the offense. Id. at ¶ 11.
 {¶ 37} Based upon our holding in Grimes (and numerous decisions following Grimes), we find that the trial court did not err in imposing non-minimum sentences for Miller's offenses. See, also, State v.Miller, Auglaize App. No. 2-07-02, 2007-Ohio-4744 (Foster does not violate the Due Process Clause of the United States Constitution). We *Page 14 
do not accept Miller's implied invitation to revisit these issues. Therefore, we do not find any error, let alone plain error.
 {¶ 38} Accordingly, we overrule Miller's third assignment of error and affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 15 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellant pay the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
McFarland, P.J. and Abele, J.: Concur in Judgment and Opinion.
[1] Lowe also requires "substantial proof that the alleged other acts were committed by the defendant[.]" Lowe at 530. Here, however, Miller does not argue that he did not commit the other acts. *Page 1